**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ANNA WEICK and IRA STOLL, | |
| Plaintiffs, on their own behalf and on behalf of all others similarly situated, | |
| v. | Civil Action No. 1:25-cv-13123-AK |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE, | |
| Defendant. | |

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND</u>

This class action lawsuit asks a court to decide whether an employee's paid "personal time" is a "wage" protected by the Massachusetts Wage Act. Defendant maintains a written human resources policy offering three paid personal days per year to certain classes of employees, but it retains the unused balance when an employee separates. This policy applies to both employees who are and are not members of a collective bargaining unit. The claims of the two named plaintiffs are completely indistinguishable even though one (Anna Weick) was a union member and the other (Ira Stoll) was not. All class members suffered the same injury regardless of union status: deprivation of earned wages. Harvard removed the case on the grounds that the suit is preempted by § 301 of the Labor Management Relations Act ("LMRA"). But § 301 does not preempt this claim – and no federal jurisdiction exists – because its resolution is based on the Massachusetts Wage Act and does not require the Court to interpret any provision of a collective bargaining agreement ("CBA").

Unlike wage claims that have been held preempted under the § 301 of the LMRA, this case does not present any dispute over the amount owed to plaintiffs, whether personal time was properly accounted for, the rate at which it should be paid out, or any other questions that require interpretation of the CBA for unionized plaintiffs. Instead, the claim requires only a determination of the rights under Massachusetts law that arise independent of any CBA, which is a task best left to the state courts.

As the Supreme Court has repeatedly emphasized, preemption under §301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985) ("Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law."); *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 411 (1988) ("[S]ubstantive rights in the labor relations context can exist without interpreting collective-bargaining agreements."); *Lawless v. Steward Health Care System, Inc.*, 894 F.3d 9, 18 (1st Cir. 2018) ("[S]ection 301 does not 'preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.'" (*quoting Lueck*, 471 U.S. at 212)). Here, the Wage Act confers on Massachusetts employees the right to be paid their wages upon "leaving [their] employment." M.G.L. c. 149 § 148. The only question to be answered is whether personal days constitute wages, but that question must be answered through interpretation of state law, not through construction of any collective bargaining agreement. The fact that one named plaintiff is subject to a collective bargaining agreement and another is not – while both assert identical claims – underscores that the CBA is irrelevant to the fundamental question at hand. This case can be resolved without even pulling the CBA off the shelf, much less interpreting its terms. Consistent with Supreme

Court and First Circuit precedent, the Court should reject Harvard's long-shot preemption

argument and remand this matter to state court where it belongs.

I.      **BACKGROUND**

On September 17, 2025, Plaintiff Anna Weick filed suit against Harvard in Massachusetts

superior court, asserting a single claim for violation of the Massachusetts Wage Act arising out

of Harvard's failure to pay her for her accrued personal days upon separation. Notice of Removal

¶ 1, Doc. No. 1. Under the Wage Act, "any employee leaving his employment shall be paid in

full on the following regular pay day, and, in the absence of a regular pay day, on the following

Saturday; and any employee discharged from such employment shall be paid in full on the day of

his discharge." M.G.L. c 149 § 148. Section 148 does not define "wages" but does specify that

they include any "holiday or vacation payments due an employee under an oral or written

agreement." Massachusetts courts have held that paid time off, personal days, and other paid

time off benefits similar to vacation are considered wages that must be paid upon termination of

employment. *See, e.g.*, *Byrnes v. Lukes*, No. WOCV200901403, 2012 WL 66088974 (Mass.

Super. Sept. 27, 2012) (ordering employer to pay former employee for accrued personal days).

Although there is mixed authority on this question at the superior court level, a 2018 Supreme

Judicial Court decision clarified that paid time off that "can be used for time away from work for

any reason" – unlike sick time or other time off conditioned on a *specific reason* – is considered

a wage under state law. *Tze-Kit Mui v. Mass. Port Auth.*, 478 Mass. 710, 713 (2018). Although

the SJC has not squarely held that paid "personal time" is a "wage" under the Wage Act, *Mui*'s

rationale all but forecloses any coherent argument to the contrary.

Ms. Weick seeks to represent a class of all former Harvard employees who were similarly deprived of accrued paid personal time in violation of the Wage Act. The Human Resources policy that governs personal time – available on Harvard's website – states that:

> 3 personal days annually offer additional flexibility in balancing work and life. Personal days are given on January 1 and must be used by December 31. New employees receive personal days on a prorated basis depending upon start date: January 1-March 31 - 3 personal days; April 1-June 30 - 2 personal days; July 1-September 30 - 1 personal day.

Paid Time Off & Leaves Policy, attached to the Affidavit of Francis J. Bingham as **Exhibit 1**.[1] The paid time off policies, including the personal time policy, "apply to administrative and professional staff; overtime eligible, non-bargaining unit staff; and employees covered by HUCTW, except as noted. Members of other bargaining units should consult their union contract for time off policies." *Id*. The personal time policy applied to Ms. Weick because she was a member of the HUCTW (Harvard University Clerical and Technical Workers). As a HUCTW member, Ms. Weick was subject to a collective bargaining agreement, which is appended to Harvard's removal papers. Notice of Removal Ex. B, Doc. No. 1. HUCTW members are also subject to a "Personnel Manual," which is incorporated into the CBA. *Id*. at ¶ 13, Ex. C. When Ms. Weick's employment with Harvard ended on June 20, 2025, she had 21 hours (i.e., three full days) of accrued, unused personal time, which Harvard did not pay her and retained for itself. First Am. Compl. ¶¶ 22-23, Doc. No. 11.

On October 24, 2025, Ms. Weick filed an amended complaint in superior court adding a non-unionized former employee (Ira Stoll) as a plaintiff and putative class representative. Bingham Aff., ¶ 5. Mr. Stoll was subject to the exact same HR policy and suffered the same Wage Act violation as Ms. Weick. First Am. Compl. ¶ 22, Doc. No. 11. The only difference

---

[1] Available at https://hr.harvard.edu/paid-time-leaves (last accessed Nov. 12, 2025).

between them was that Ms. Weick belonged to a union while Mr. Stoll did not. *Id*. at ¶ 21. On the same day that Mr. Stoll was added as a plaintiff in the superior court suit, Harvard (seemingly unaware of Mr. Stoll's addition) removed the action to federal court based on its argument that the federal Labor Management Relations Act ("LMRA") preempts Ms. Weick's Wage Act claim. The plaintiffs filed an amended complaint in federal court, adding Mr. Stoll to the suit, on October 30, 2025. Doc. No. 11. Plaintiffs now move to remand the case to state court, where it belongs.

## II.    ARGUMENT

### A.    LMRA Preemption Applies Only if the Court Must Interpret the Terms of a CBA to Resolve the Dispute – Not Merely Because the Plaintiff Belongs to a Union or the Litigation May Involve Passing Reference to the CBA.

The Labor Management Relations Act confers jurisdiction on federal courts to resolve "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a).  Section 301 of the LMRA requires that federal common law govern such suits, *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957), and preempts any state law claims whose resolution "requires the interpretation of a collective-bargaining agreement," *Lingle*, 486 U.S. at 413.  As the Supreme Court explained in *Caterpillar Inc. v. Williams*, preemption under § 301 applies to any state law claim that is either "founded directly on rights created by collective-bargaining agreements" or "'substantially dependent on analysis of a collective-bargaining agreement.'" 482 U.S. 386, 394 (1987) (*quoting Electrical Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). As the removing party, Harvard bears the burden of proving that this court has federal question jurisdiction. *Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 61 (1st Cir. 2021).

The purpose of LMRA preemption is to ensure consistency in the interpretation of collective bargaining agreements and to preserve the effectiveness of arbitration by allowing arbitrators rather than courts to interpret labor contracts. *See Lingle*, 486 U.S. at 411 (federal preemption under § 301 assures that "interpretation of collective-bargaining agreements remain firmly in the arbitral realm"). But not all disputes involving union members and their employers, or even all disputes concerning the provisions of a collective bargaining agreement, are preempted by § 301. "Claims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301." *Caterpillar*, 482 U.S. at 396 n.10. "[S]tate law claims that require 'only consultation with the CBA,' as opposed to 'actual interpretation' of the CBA, 'should not be extinguished.'" *Lawless*, 894 F.3d at 18 (*quoting Adames v. Exec. Airlines, Inc*., 258 F.3d 7,12 (1st Cir. 2001)). An overly broad reading of LMRA preemption would impermissibly confer upon unions and employers the "power to exempt themselves from whatever state labor standards they disfavored" and the "ability to contract for what is illegal under state law." *Lueck* 471 U.S. at 212. Thus, § 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas*, 512 U.S. at 123. A contrary rule "'would provide union employers with irresistible incentive to pour into the collective bargaining agreement all the safety, insurance, and individual rights protected by state law, and then claim immunity from suit ... [s]uch a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored.'" *Cullen v. Henry Haywood Mem'l Hosp.*, 95 F. Supp. 3d 130, 137 (D. Mass. 2015) (*quoting LaRosa v. United Parcel Serv., Inc*., 23 F. Supp. 2d 136, 144 (D. Mass. 1998)).

The "basic test" for assessing § 301 preemption is whether the court, "in passing upon the claim, would be required to interpret the collective bargaining agreement." *Flibotte v. Penn. Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997). "In practice, this test boils down to whether the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement." *Id.* A claim can "'depend' on the 'meaning' of a collective bargaining agreement if it "alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement," or if its "resolution arguably hinges upon an interpretation of the collective bargaining agreement." *Id.* That said, an employer cannot invoke § 301 merely by raising a defense based on a collective bargaining agreement. *Caterpillar*, 482 U.S. at 399 ("[A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." (emphasis in original)). The Supreme Court has made clear "that a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective bargaining agreement." *See Id*. at 396 (emphasis in original). A state law claim will not be preempted "if it requires no more than a 'bare' consultation of a CBA, without dispute as to 'the meaning of [any] contract terms.'" *Rose*, 1 F.4th at 61 (*quoting Livadas*, 512 U.S. at 124).

Applying this standard, numerous federal courts in the First Circuit and elsewhere have rejected employers' attempts to use § 301 to escape liability under state wage laws where, as here, they are merely brought by workers covered by a CBA and their claims do not require interpretation of the CBA. In *McKinney v. Steward St. Elizabeth's Med. Ctr. of Bos., Inc.,* No. 23-CV-12115-GAO, 2024 WL 1509212, at *6-7 (D. Mass. Feb. 2, 2024), the court held that the

plaintiff's claim for failure to pay all accrued paid time off ("PTO") upon separation was not

preempted under the LMRA because there was no dispute about the amount of wages owed. The

employer argued that LMRA preemption applied because the plaintiff's right to PTO derived

from the CBA and was not required under the Wage Act. The court rejected that argument,

holding that it "stretche[d] § 301's complete preemption doctrine well beyond its recognized

margins." *Id*. at *5. Even though the entitlement to PTO was "born of the governing [CBA]," the

employer's obligation to pay those wages was an obligation of state statute. *Id*. at *6. And, "once

it became clear that the plaintiff's claim was only for penalties under the Massachusetts Wage

Act (and thus was not a dispute about the amount of wages owed under a CBA), 'any prospect

for preemption vanished.'" *Id*. at *5 (quoting *Lawless*, 894 F.3d at 19).

Remand is also required when state wage laws govern the outcome of the case regardless

of what is contained in the CBA. This was the result in *Hamel*, which involved a group of

unionized electrical workers who alleged that their employer required them to work 8.5 hours

with a half-hour unpaid meal break, but "failed and refused to relieve" them from work duties

during the break. *Hamel v. Western Mass. Electric Co*., No. 22-30097-MGM, 2023 WL

12051503, at *1 (D. Mass. Aug. 4, 2023). The court held that because the complaint alleged that

the employers had actual knowledge of the plaintiffs' unpaid work hours, state law granted a

right to payment for that time "'regardless of whether it would be compensable under the

CBA.'" *Id.* at *3 (*quoting Rueli v. Baystate Health, Inc.*, 835 F.3d 53, 62 (1st Cir. 2016)).

Accordingly, there was "no plausible reason that resolution of this claim would require

interpretation of the CBA" and LMRA did not preempt the claim. *Id*.

Courts have also held that there is no LMRA preemption when a claim requires mere

consultation or application of the CBA, but none of its provisions are in dispute or require

interpretation. *See Hernandez v. Harvard Univ.*, No. 12-11978-DPW, 2013 WL 1330842, at *2 (D. Mass. Mar. 28, 2013) (claims under Massachusetts tips law remanded because employer could not identify "what parts of the CBA are plausibly in dispute or need to be interpreted, rather than merely consulted or applied"); *Kline v. Security Guards, Inc.,* 386 F.3d 246, 256 (3d Cir. 2004) (preemption not warranted where defendant "do[es] not point to any specific provision of [the CBA] that must be interpreted in order to resolve [plaintiff's] claims").

This Court also declined to apply LMRA preemption in *Glynn v. Martin Sports & Ent., LLC*, No. 1:19-CV-12189-IT, 2021 WL 4295774 (D. Mass. Sept. 21, 2021), which involved an employer's refusal to pay wages owed pursuant to a CBA. The court held that the LMRA did not preempt the plaintiffs' claims because the employer did not dispute the meaning of the CBA's terms (setting forth wage rates), but instead challenged whether the CBA's terms "were modified" and "the work was performed as requested." *Id*. at *3. Such inquiries, the court held, did "not come 'within the LMRA's protective sweep.'" *Id. (quoting Rose*, 1 F.4th at 61).

By contrast, courts have applied LMRA preemption to claims that require the court to analyze and interpret some disputed language in the CBA itself. *See, e.g., Rose,* 1 F.4th at 62 (adjudicating whether plaintiff was owed additional wages for commuting to a different branch location would "'require construing and applying the various peculiarities of industry-specific wage and benefit structures embodied in the CBA'") (*quoting Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 8 (1st Cir. 2012)) ; *Davis v. Northeast Ctr. for Youth & Families, Inc.*, 662 F. Supp. 3d 151, 157 (D. Mass. 2023) (claim for overtime pay was preempted because the CBA contained a complicated and fluctuating wage structure enshrined in multiple different provisions, which the court would have to interpret to adjudicate the claim); *Arnstein v. MVM, Inc.,* No. 12–10666-RWZ, 2012 WL 4863043, at *3 (D. Mass. Oct. 12, 2012) (meal break claims

were preempted because determining whether the plaintiffs were at "work" during break required interpreting the CBA's definition of "work" and "break" and whether the breaks were necessary to comply with federal security requirements necesitated interpretation of several provisions of the CBA); *Clee v. MVM, Inc.*, 91 F. Supp. 3d 54, 63 (D. Mass. 2015) (claim to collect wages for unpaid work was preempted because it required interpretation of the CBA to determine whether shifts contemplated preparation time, to construe the meaning of the word "report," and to determine the effect of "Government action" on the agreement); *Mitchell v. Globe Newspaper Co.*, 602 F. Supp. 2d 258, 261 (D. Mass. 2009) (LMRA preemption applied because the dispute was over not just the plaintiffs' entitlement to vacation pay, but also the proper rate of vacation pay, which required interpretation of the CBA to resolve); *Teixeira v. Quality Beverage Ltd. P'ship*, 351 F. Supp. 3d 188, 192-93 (D. Mass. 2019) (LMRA preemption applied because plaintiffs' wage claim was based on a provision in the CBA limiting the amount an employee could be required to contribute to health insurance premiums and there was no independent limit on such contributions in Massachusetts law).

The First Circuit, anticipating a case such as this one, cautioned in *Cavallaro* that when there is "no dispute about the amount" owed and the claim turns on whether wages were properly "paid under the terms of the state law," preemption is not appropriate. *Cavallaro*, 678 F.3d at 8. There, plaintiffs sought compensation for pre-and post-shift work, meal breaks, and training sessions. The First Circuit concluded that these issues "require[d] construing and applying the various 'peculiarities of industry-specific wage and benefit structures' embodied in the CBA," but the court took care to contrast the very different situation, presented in this case, where there is no dispute about the amount owed. *Id.* (*quoting Adames*, 258 F.3d at 13).

These cases underscore that the LMRA's purpose is not to deprive unionized workers of state law wage protections merely because they belong to a union, but rather to ensure that *disputes about the meaning and application of a CBA itself* are subject to a uniform body of law. After all, § 301 applies to "suits for **violation of** contracts between an employer" and a union (emphasis added), not all suits brought by a unionized employees. Any doubts about the Court's jurisdiction under the removal statute should be resolved in favor of remand. 14C Charles Alan Wright et al., Federal Practice and Procedure § 3739.1 (4th ed. Rev. 2025) ("[A] great many cases can be cited for the proposition that if federal subject-matter jurisdiction over a removed case is doubtful, the case should be remanded to state court.").

### B.    Resolution of Plaintiffs' Wage Act Claim Does Not Plausibly Require Interpretation of the CBA.

The LMRA does not preempt the plaintiffs' Wage Act claim because the claim exists independently of the applicable CBA and there is no reason to interpret or apply the CBA's provisions to resolve this dispute. Of course, Mr. Stoll's claim cannot conceivably be preempted because he was not in a union and had no rights under a CBA, disputed or otherwise. Yet even if Mr. Stoll were not a class representative, there is no plausible basis to apply LMRA preemption to Ms. Weick's claim because her dispute with Harvard is confined to the limited question of whether Harvard may withhold payment of her earned personal time upon separation. To determine whether Harvard withheld payment, the court need only consult Harvard's internal personal time records and Ms. Weick's final paystub. To determine whether Harvard may lawfully withhold such payment, the court need only consult Massachusetts state law. As explained above, the SJC's decision in *Mui* establishes that personal time is a "wage" as defined by Massachusetts law because, unlike with sick time, there are no specific conditions to using it. 478 Mass. at 713.  This is the same analysis required to adjudicate Mr. Stoll's claim, which only

underscores that no interpretation of the CBA is required.

This case is most analogous to cases like *McKinney* and *Hamel*, where LMRA preemption did not apply. In *McKinney*, the plaintiff was paid out some but not all of the earned PTO reflected on her final paystub. 2024 WL 1509212 at *1. She sued to recover the rest and the court held that the LMRA did not preempt her suit because it was a clerical error, not a dispute over the PTO owed under the CBA, that was to blame for the discrepancy. Thus, no interpretation of the CBA was necessary to vindicate her state law right to be paid out earned PTO upon separation. *Id.* at *5-7. The court rejected the employer's argument that because the CBA provided the plaintiff with the right to PTO, it was the CBA, not Massachusetts law that was the source of her asserted rights. The court reasoned that although the plaintiff's "initial entitlement to …PTO … is born of the government employment agreement, *i.e.*, the CBA," once she "earned" her PTO, her employer's "obligation to pay those wages becomes an obligation of statute, not merely of contract." *Id*. at *6. This case presents an even stronger argument not to apply LMRA preemption because the underlying right to personal time stems from an HR policy applied to both unionized and non-unionized employees and the CBA merely incorporates that policy. *See* Bingham Aff., Ex. 1. But even if the CBA were the only source of Ms. Weick's right to personal time, once she accrued the time, the Wage Act obligated Harvard to pay it out on separation. In other words, as long as there is no dispute about whether or how many personal days accrued, which there is not, it is state law, not the CBA, that entitles Ms. Weick to pay upon separation. *See Lueck*, 471 U.S. at 212 ("[I]t would be inconsistent with congressional intent under [§ 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.").

Courts in other jurisdictions have likewise declined to apply LMRA preemption to claims

for accrued but unpaid vacation and other types of wages, even where the underlying right to vacation derives from the CBA. *See, e.g.*, *Shanley v. Tracy Logistics LLC*, 756 F. Supp. 3d 820, 834 (E.D. Cal. 2024) (rejecting LMRA preemption where the provision governing the right to be paid out vacation was "clear" and could be applied without requiring interpretation); *Ayon v. Zero Waste Sols., Inc*, No. 2:20-CV-02424, 2021 WL 4065716, at *3 (E.D. Cal. Sept. 7, 2021) ("Defendant offered vacation benefits to Plaintiffs, so the regulation of these benefits falls under state law 'with or without the CBA.'"); *Dickerson v. Palisades Med. Ctr., Inc.*, No. CIV. 13-3382 WJM, 2013 WL 5603927, at *5 (D.N.J. Oct. 9, 2013) (remanding wage claim based on failure to pay plaintiff for vacation and personal time because evaluating plaintiff's claim that she was not paid for time worked "would not be dependent on the meaning of any term in the CBA").

Similarly, in *Hamel*, the plaintiff sought overtime pay based on the employer's actual knowledge of hours worked outside of scheduled shifts. 2023 WL 12051503 at *1. The Court held the claim was not preempted because it was based purely on state law, not on the terms of the CBA. *Id.* at *3. Like Ms. Weick, the plaintiff in *Hamel* did "not allege that employees have a contractual right" to the wages sought, but rather sought "pay pursuant to state law." *Id*. at *3. Also as here, in *Hamel* there was "no plausible reason that resolution of this claim would require interpretation of the CBA," because "the employees' paystubs would likely supply the necessary information to calculate damages." *Id*.; *see also Cavallaro*, 678 F.3d at 8 (contrasting cases in which preemption is not applied because "there was no dispute about the amount" of wages owed with those in which preemption is applied because determining the amount owed requires interpretation of the CBA).

This case can be easily distinguished from cases in which LMRA preemption was

applied because interpretation of the CBA was necessary to resolve disputes about the amount of wages owed or how to calculate those wages. Simply put, plaintiffs do not dispute the amount of wages owed or how to calculate those wages. Ms. Weick and Mr. Stoll separated from Harvard with exactly 21 hours of accrued personal time. First Am. Compl. ¶ 22, Doc. No. 11. There is no dispute that requires interpretation of the CBA, indeed nothing in the CBA would reveal how many days Ms. Weick had accrued because that information is in Harvard's payroll system. Unlike in *Mitchell*, where plaintiffs disputed the rate of pay they were entitled to for their vacation days, plaintiffs here do not put their rate of pay in dispute. 602 F. Supp. 2d at 261. And unlike in *Davis* where a complicated wage structure with fluctuating pay required the court to interpret the CBA to determine overtime pay, plaintiffs here have already accrued their personal days and the court need only consult Harvard's internal records to determine how much they are owed. 662 F. Supp. 3d at 157.

Section 301 does not apply here because plaintiffs' claims are rooted in state substantive law, not in rights or obligations contained in the CBA. The only question for the court to answer is whether the plaintiffs' accrued personal days were wages under Massachusetts law. The answer to that question can be found only in Massachusetts case law, not in the CBA. So unlike in *Teixeria*, where it was the CBA, not Massachusetts law that limited the amount an employee could be required to pay for health insurance premiums, here Massachusetts law determines whether personal days are wages and must be paid out. 351 F. Supp. 3d at 192-93.

Harvard acknowledges on its website that consultation of the CBA is not required to resolve this case. Harvard applies a single personal time policy to "administrative and professional staff," like Mr. Stoll, and "employees covered by HUCTW," like Ms. Weick. *See* Bingham Aff., Ex. 1. For "members of other bargaining units," different policies apply and

Harvard recommends consulting the applicable CBA. *Id.* Thus, there is no reason to apply different analysis or rules of decision to Ms. Weick's claim.

Holding that Ms. Weick's claim is preempted would advance neither of the twin goals of § 301. First, preemption would not ensure consistency in the interpretation of the applicable CBA because no CBA provision needs to be interpreted. The only interpretation required is whether Harvard's practice of withholding personal time upon separation violates the Wage Act, a question that is not intertwined with the CBA. Second, preemption would not preserve the effectiveness of arbitration, because this is not a contract dispute subject to arbitration. The rights Ms. Weick seeks to vindicate are based in substantive state law, not the CBA. Pursuing a claim through the CBA's grievance process would be fruitless.

Finding that the LMRA preempts the Wage Act claim asserted here would create an outcome that Congress could not have possibly intended when it passed a statute displacing state law claims "for violation of" a collective bargaining agreement: the complete displacement of substantive rights derived from state law. Courts have consistently rejected the idea that a unionized employee like Ms. Weick should be stripped of her substantive labor rights under state law while those same rights remain intact for a non-unionized employee like Mr. Stoll. *See e.g.*, *Lueck* 471 U.S. at 212 (section 301 does not give parties "the ability to contract for what is illegal under state law"); *Livadas*, 512 U.S. at 123 (section 301 "cannot be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law"). This Court should likewise reject Harvard's attempt to evade Wage Act liability, hold that LMRA preemption does not apply, and remand the matter to state court where it belongs.

III.    **<u>CONCLUSION</u>**

The purpose of LMRA preemption is to ensure the consistent and uniform interpretation of CBAs – not to strip substantive state law rights from workers simply because they belong to a union. Nothing about Ms. Weick's Wage Act claim, which seeks to vindicate a right that exists independently of the applicable CBA, requires the interpretation of her union contract. Thus, the claims should be remanded to state court.

Respectfully submitted,

ANNA WEICK and IRA STOLL, individually and for all others similarly situated,

By their attorneys,

/s/ Francis J. Bingham
Francis J. Bingham (BBO No. 682502)
Brook Hopkins (BBO No. 683871) (admission pending)
Bingham Hopkins LLC
20 University Road, Suite 500
Cambridge, MA 02138
Telephone: (617) 798-2302
Francis.Bingham@binghamhopkins.com
Brook.Hopkins@binghamhopkins.com

/s/ Raymond Dinsmore
Raymond Dinsmore, Esq. (BBO No. 667340)
Richard E. Hayber, Esq. (BBO No. 569131)
Ryan B. Guers, Esq. (BBO No. 713870)
Hayber, McKenna, & Dinsmore, LLC
One Monarch Place, Suite 1340
Springfield, MA 01144
Telephone: (413) 785-1400
rdinsmore@hayberlawfirm.com
rhayber@hayberlawfirm.com
rguers@hayberlawfirm.com

Dated: November 13, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2025, a true copy of the above document was electronically filed through the Court's ECF system, and will be send electronically to the registered participants as identified on the Notice of Electronic Filing.

<u>*/s/ Francis J. Bingham*</u>
Francis J. Bingham