IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANNA WEICK and IRA STOLL,<br><br>    Plaintiffs, on their own behalf and on behalf of all others similarly situated,<br><br>  v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>    Defendant. | Civil Action No. 1:25-cv-13123-AK |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiffs Anna Weick ("Weick") and Ira Stoll ("Stoll") (collectively, "Plaintiffs") fail to state a claim upon which relief can be given. Plaintiffs allege that Defendant President and Fellows of Harvard College ("Harvard" or the "University") violated the Massachusetts Wage Act (the "Wage Act") by failing to pay out unused personal time when their employment was terminated. As set forth below, Weick's claim is preempted by federal labor law because it turns on rights and obligations contained in a labor agreement between Harvard and the Harvard Union of Clerical and Technical Workers ("HUCTW" or "the Union"), which represented her. The labor agreement, which consists of a collective bargaining agreement (the "Agreement") and a negotiated Personnel Manual ("Personnel Manual") (together, the "CBA"), establishes the terms of how bargaining unit employees acquire and use their personal days and specifically states that "[e]mployees leaving the University will not be paid for their unused personal days." The CBA also describes other paid time off such as vacation and sick time. Thus, any determination as to whether Weick was paid all wages owed to her under the Wage Act necessarily requires an interpretation of the CBA and

321874903v.1

therefore is preempted by federal labor law. Weick's recourse for any alleged violation of the CBA (i.e., nonpayment of wages) was a grievance pursuant to the procedure in the Agreement. As she has failed to exhaust that process, she cannot pursue a claim under Section 301 in court.

Furthermore, as to both Plaintiffs, the Amended Complaint fails to state a claim upon which relief can be granted because personal time is not a wage covered by the Wage Act. The law is well-established that not all forms of compensation are wages within the scope of the Wage Act. While the statute narrowly defines wages to "include any holiday or vacation payments," it does not include in that definition personnel time.  While Plaintiffs imply that the personal time they were allotted was essentially vacation time, they admit in their Amended Complaint that Harvard maintained a separate and distinct vacation policy and accrual, and that Harvard paid Plaintiffs all unused accrued vacation time upon their termination. Their personal time was accrued on a different schedule and maintained as a different category of time, and was therefore not vacation time and not a wage under the statute.  As a result, Plaintiffs' Amended Complaint must be dismissed with prejudice.

## FACTS AS ALLEGED IN THE AMENDED COMPLAINT[1]

Harvard is an institution of higher education in Cambridge, Massachusetts. *See* Dkt 11, Amended Complaint at ¶ 6. Weick alleges that she was employed by Harvard from August 23, 2021 until her termination on June 20, 2025. *Id*. at ¶ 11. Stoll alleges that he was employed by Harvard from January 2019 to July 22, 2023. *Id*. at ¶ 12.

I.   The Collective Bargaining Agreement.

Weick alleges that she "was a member of the HUCTW union."[2]  *Id.* at ¶ 21.  Harvard and HUCTW are parties to a collective bargaining agreement, effective October 1, 2022 through June

---

[1] Harvard accepts the allegations of the Amended Complaint as true for purposes of this motion only.
[2] HUCTW refers to the Harvard Union of Clerical and Technical Workers.  *See* Exhibit A.

30, 2026. A copy of the Agreement is attached as <u>Exhibit A</u>. In addition, Harvard and HUCTW have negotiated a Personnel Manual, which is an "adjunct to the basic Agreement." *See* <u>Exhibit B</u>, p. 1.[3] Together, both the Agreement and Personnel Manual constitute the CBA.

According to the Personnel Manual, the normal work week is 35 hours, Monday through Friday, meaning seven hours per day. Exhibit B, p. 10. The CBA states that bargaining unit employees, such as Weick, are eligible to receive paid vacation, paid sick time and paid personal time. *See* Exhibit A, p. 44; Exhibit B, pp. 20-24. In the case of vacation time, employees accrue vacation time depending on their full-time versus part-time status and their seniority. *See* Exhibit A, p. 44; Exhibit B, pp. 20-22. Upon termination of employment, employees are paid out any accrued but unused vacation time. *See* Exhibit B, p. 21. As to sick time, employees accrue sick time based on their full versus part-time status. *See* Exhibit B, p. 23. Unused but accrued sick time is not paid out to employees. *Id*.

As to personal time, the Personnel Manual states in relevant part:

Each January 1st the University grants three personal days off with pay to employees. These days may be taken at the discretion of the employee, where possible by agreement with the supervisor. Because personal days do not accrue from year to year, they must be taken prior to the beginning of the next calendar year. Employees leaving the University will not be paid for their unused personal days . . . .

---

[3] Although not attached to the Amended Complaint, this Court may consider and take judicial notice of both the agreement and the Personnel Manual. *See e.g.*, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (stating that the "complete preemption doctrine" is an "independent corollary to the well-pleaded complaint rule") (internal quotations and citations omitted); *Pennsylvania R. Co. v. Day*, 360 U.S. 548, 553 (1959) ("We can take judicial notice of the fact that provisions in railroad collective bargaining agreements are of a specialized technical nature calling for specialized technical knowledge in ascertaining their meaning and application."); *Cavallaro v. UMass Memorial Healthcare, Inc.*, 678 F.3d 1, 5 (1st Cir. 2012) (noting that "the CBA has been invoked by defendants and its existence is not disputed by plaintiffs" and stating that "[t]he interrelationship of the state claims and a CBA cannot be avoided merely by refusing to identify the CBA in the complaint and citing the well pleaded complaint rule"); *Barry v. UMass Memorial Medical Center*, Inc., 245 F. Supp. 3d 323, 234, n. 1 (D. Mass. 2017) ("Although the CBA was attached as an exhibit to [defendant's] motion, this Court may consider it in the context of the motion to dismiss [based on Section 301 preemption] because the document's authenticity is not disputed and it is central to Plaintiff's claims.") (citing *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007)).

3

*Id.*, p. 27. Employees who start the year after January 1 are provided a reduced number of personal days. *Id.* Further, part-time employees receive a pro-rated number of personal days. *See id.*; Exhibit A, p. 44.

The Personnel Manual explains that personal time may be used for religious observances. Exhibit B, p. 28. Further, personal time may be used to supplement paid leave time. *See* Exhibit A, p. 30.

The CBA establishes a procedure for resolving disputes regarding the interpretation and application of any term of the parties' agreement. *See* Exhibit A, at pp. 9-12; Exhibit B, pp. 1, 58. If local problem-solving and mediation are unsuccessful at resolving a grievance, the parties may submit a dispute to arbitration. *Id.* at 1. Harvard and HUCTW have agreed that certain issues, such as "conformance with benefits and the like" are "clearly arbitrable." *Id.*

II.   Plaintiffs' Allegations.

Both Plaintiffs allege that the Paid Time Off & Leaves Overview (available at https://hr.harvard.edu/paid-time-leaves) (the "Overview") applied to them. Amended Complaint, ¶ 21. A copy of the Overview is attached hereto as Exhibit C.[4] The Overview provides a summary of paid time off for eligible Harvard employees. The Overview details seven different types of paid time off and leaves including vacation, personal days, sick days, paid holidays, leave for new parents, and time off for jury duty and bereavement. It provides that administrative and professional staff are eligible for a minimum of 20 vacation days annually, while support staff with

---

[4] In ruling on a motion to dismiss, this Court may consider documents that are referenced in the Complaint. *See e.g., Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001) (stating that a court may properly consider "documents sufficiently referred to in the complaint" on a Rule 12(b)(6) motion to dismiss); *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When…a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)").

under five years of service are eligible for 15 vacation days annually. Separately, with respect to personal days, it states that "**3 personal days** annually offer additional flexibility in balancing work and life." Exhibit C. The policy explains that "[p]ersonal days are given on January 1 and must be used by December 31." *Id*. Personal time is prorated depending on start date and part-time versus full-time status.[5] *Id*. Plaintiffs allege that they could and did use personal time for a variety of reasons. Amended Complaint, ¶¶ 17, 18.

Plaintiffs allege that at the beginning of every year, they received three paid personal days—the equivalent of 7 hours per day—to be used for any purpose or forfeited at the end of the year. *Id.* at ¶ 13. Upon her termination, Weick had 280 hours of unused vacation time and 21 hours of unused personal time. *Id*. at ¶ 22. Harvard paid out her accrued vacation time, but did not pay out her personal time. *Id*. at ¶ 23. Stoll had 186.72 hours of unused vacation time and 21 hours of unused personal time at the time of his separation. *Id*. at ¶ 22. Like with Weick, Harvard paid out Plaintiff Stoll's accrued vacation time, but did not pay out his personal time. *Id*. at ¶ 24. Plaintiffs allege that by withholding payment for unused personal time at the end of their employment, Harvard violated the Wage Act. *Id*. at ¶ 26.

## ARGUMENT

Plaintiffs' Amended Complaint should be dismissed with prejudice. Under Fed. R. Civ. P. 12(b)(6), a complaint must be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action . . . do not suffice." *Id.* Rather, the plaintiff bears the burden of pleading facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the

---

[5] Plaintiff Weick alleges that Harvard had a "policy" of not paying out unused personal time, but the policy (Exhibit C) says nothing about this. That is addressed in the negotiated Personnel Manual.

misconduct alleged." *Id.* In applying this standard, the Court "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Then, the remaining "well-pled (*i.e.*, non-conclusory, non-speculative) facts [are] taken as true" to "see if they plausibly narrate a claim for relief." *Id.*

As described below, Weick's claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA") and is barred by the CBA's grievance and arbitration procedure. But overall, the Amended Complaint must be dismissed in its entirety because the Wage Act, precedential case law, and applicable guidance from the Office of the Attorney General all confirm that personal time is not a wage.

**I.    WEICK'S MASSACHUSETTS WAGE ACT CLAIM IS PREEMPTED BY FEDERAL LABOR LAW**

Weick's Wage Act claim is preempted by federal labor law. Section 301 provides for complete preemption of disputes arising under a collective bargaining agreement. 29 U.S.C. § 185(a). Because the country's labor policies are national in scope, "in enacting 301, Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 857 (1987) (quoting *Int'l Bhd. of Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962)). As a result, "a suit . . . alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) (citing *Lucas Flour Co.*, 369 U.S. at 103-104).

The preemptive scope of Section 301 is not limited to suits alleging a violation of the applicable labor agreement. Rather, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim

321874903v.1

must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers*, 471 U.S. at 220 (internal citation omitted); *see also Cavallaro*, 687 F.3d at 5 (stating that the Supreme Court "explicitly extended complete preemption to state law claims founded directly on rights created by collective-bargaining agreements or substantially dependent on analysis of a collective-bargaining agreement") (internal quotations and citations omitted). A state law claim cannot escape preemption unless "it requires no more than 'bare' consultation of a CBA, without dispute as to 'the meaning of [any] contract terms.'" *Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 61 (1st Cir. 2021) (quoting *Livada v. Bradshaw*, 512 U.S. 107, 124 (1994)). "If a claim plausibly requires interpretation of one or more provisions of a CBA, it comes within the LMRA's preemptive sweep. *Rose*, 1 F.4th at 61.

Weick's Wage Act claim is premised on her allegation that unused personal time must be paid out upon termination. However, there is no way to address this issue without looking to the both the Agreement and the Personnel Manual, both of which are the product of collective bargaining between Harvard and the HUCTW. Together, those agreements describe the personal time benefit, including how and when it is acquired and whether it is paid out upon termination. In order to determine whether Weick was paid all wages due to her, the Court will necessarily have to interpret the language of the Personnel Manual.[6] For example, Weick alleges that she acquired three days of personal time, effective on January 1, 2025. Since the Personnel Manual explains that personal time may be prorated or reduced depending on an employee's status, a determination of whether Weick in fact had 21 hours of personal time at the time of her termination will require an interpretation of the Agreement and Personnel Manual. Therefore, Weick's Wage Act claim is preempted by the LMRA and must be dismissed. *See Cavallaro*, 678 F.3d at 8 (affirming dismissal

---

[6] While Weick points to the Paid Time Off & Leaves Overview on Harvard's website (Exhibit C), the Overview says nothing about whether personal time is paid out upon termination.

of plaintiffs' Wage Act claims where determining what (if any) wages were owed to plaintiffs depended "at least arguably on interpretations and applications of the CBA"); *Mitchell v. Globe Newspaper Co.*, 602 F. Supp. 2d 258, 261 (D. Mass. 2009) (dismissing plaintiff's Wage Act claim for unpaid vacation time pursuant to the LMRA because the claim was "dependent on the CBA vacation pay provision"); *Caswell v. Ferrara & Sons, Inc.*, No. 01-11993-JLT, 2002 WL 31986854, at *3 (D. Mass. July 30, 2002) (finding that plaintiff's Wage Act claim for unpaid vacation pay was preempted by federal labor law because resolution of the claim required interpretation of the CBA to determine whether plaintiff had earned vacation pay).

## II. WEICK'S WAGE ACT CLAIM CANNOT BE TREATED AS A SECTION 301 CLAIM

Nor can Weick's claim be reframed as asserting a Section 301 claim because she has not exhausted the Agreement's grievance procedure. Before an employee may bring a suit against her employer under Section 301, she must attempt to exhaust any exclusive grievance and arbitration procedures established by the labor agreement. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). To allow otherwise would "deprive the employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances." *Id.* at 653. Accordingly, where an individual's state law claim is preempted by federal law and may only be brought as a Section 301 claim under the LMRA, it may be dismissed where the employee failed to timely exhaust the grievance procedures set forth in the collective bargaining agreement. *See White*, 548 F. Supp. 3d at 274 ("'Plaintiffs' failure to exhaust available grievance procedures under the CBA precludes this Court from treating those claims as having been brought under § 301, and dismissal is thus required'"), quoting *DiGiantommaso v. Globe Newspaper Co.*, 632 F. Supp. 2d 85, 90 (D. Mass. 2009); *Rose v. RTN Fed. Credit Union*, No. 19-cv-11854, 2019 WL 1237555, at *1, (D. Mass. Dec. 9, 2019) (holding that adjudication of plaintiff's claims to recover unpaid wages

required interpretation of the CBA and that "[d]ismissal is appropriate if plaintiffs have not previously raised the claims through the grievance procedure"), *aff'd* 1 F.4th 56 (1st Cir. 2021).

Here, the Agreement contains a grievance and arbitration procedure. *See* Exhibit A, at pp. 9, 12. Weick does not allege (nor could she) that she exhausted this procedure. *See generally*, Complaint ¶¶ 1-49. As such, she is precluded from bringing a claim under Section 301 of the LMRA. *See Allis-Chalmers Corp.*, 471 U.S. at 220-21 (holding that the "complaint should have been dismissed for failure to make use of the grievance procedure established in the collective-bargaining agreement or dismissed as pre-empted by § 301") (internal citation omitted); *White*, 548 F. Supp. 3d at 274 (granting employer's motion to dismiss plaintiffs' Massachusetts statutory and common law claims on Section 301 preemption grounds where "[p]laintiffs do not allege that they followed the CBA's grievance process, nor have they refuted defendant's allegation that they did not do so"). Weick's claim must be dismissed.

### III.  PERSONAL TIME IS NOT A WAGE COVERED BY THE WAGE ACT

Setting aside that Weick's claim is preempted, the Amended Complaint fails to state a claim because personal time is not a wage under the Wage Act. Plaintiffs contend that Harvard violated the Wage Act by failing to pay out personal time upon termination. But the Wage Act requires no such thing.

As a starting point, the Wage Act requires that "any employee leaving his employment shall be paid in full on the following regular pay day, and, in the absence of a regular pay day, on the following Saturday; and any employee discharged from such employment shall be paid in full on the day of his discharge." M.G.L. c. 149, § 148. While the Wage Act does not define "wages," the Supreme Judicial Court has emphasized that "[n]ot all forms of employee compensation or benefits are 'wages'" under the Act. *Nunez v. Syncsort Inc.*, 496 Mass. 706, 709 (2025) (citing

9

*Boston Police Patrolmen's Ass'n v. Boston*, 435 Mass. 718, 721 (2002) (contributions to deferred compensation plan are not "wages")). Rather, the language of the statute specifies that "wages" "shall include any holiday or vacation payments due an employee under an oral or written agreement," and "so far as apt, . . . payment of commissions when the amount of such commissions . . . has been definitely determined and has become due and payable." M.G.L. ch. 149, § 148. Thus, the Wage Act covers only certain, limited types of compensation, and "because the Wage Act carries criminal penalties . . . courts have been reluctant to extend its reach beyond the wages . . . which the statute expressly mentions." *Noreke v. Gideon Taylor Consulting, LLC*, No. 23-CV-11161-DJC, 2025 WL 2370952, at *3 (D. Mass. Aug. 14, 2025) (internal citation omitted); *Nunez*, 496 Mass. at 709 ("Severe consequences may flow from even minor violations of the Wage Act, including potential criminal liability, treble damages, and personal civil liability against a company's owner."). As a result, the SJC has repeatedly held that the Wage Act must be construed narrowly. *Mui v. Massachusetts Port Auth.*, 478 Mass. 710, 713 (2018) ("We have not broadly construed the term 'wages' for the purposes of the act . . ."); *Nunez*, 496 Mass. at 710 (same);[7] *see also Weiss v. DHL Exp., Inc.*, 718 F.3d 39, 47 (1st Cir. 2013) ("In refusing to adopt a broad definition of wages covered under the Act, Massachusetts courts speak of the Act's

---

[7] Just last month, in October 2025, the SJC reiterated the limited scope of the statute in *Nunez*, noting Massachusetts "appellate cases have uniformly rejected attempts to include other forms of contingent compensation within the meaning of 'wages.'" 496 Mass. at 710-11 (citing *Mui*, 478 Mass. at 713 (accrued, unused sick time not "wages" because only available to departing employees meeting certain eligibility criteria); *Weems v. Citigroup Inc.*, 453 Mass. 147, 153-54 (2009) (discretionary stock option plan not wages because contingent on continued employment); *O'Connor v. Kadrmas*, 96 Mass. App. Ct. 273, 288 (2019) (profit distributions under stock agreement not wages because, among other reasons, of their contingent nature); *Prozinski v. Northeast Real Estate Servs., LLC*, 59 Mass. App. Ct. 599, 603 (2003) (severance pay not wages because contingent upon severance)); *see also Weiss v. DHL Express, Inc.*, 718 F.3d 39, 47-48 (1st Cir. 2013) (retention bonus not "wages"); *Sheedy v. Lehman Bros. Holdings Inc.*, No. CIV.A. 11-11456-RGS, 2011 WL 5519909, at *1 (D. Mass. Nov. 14, 2011) (incentive signing bonus depending upon employee retention not "wages"); *Doucot v. IDS Scheer, Inc.*, 734 F. Supp. 2d 172, 193 (D. Mass. 2010) (bonus not "wages"); *Sterling Rsch., Inc. v. Pietrobono*, No. CIV.A. 02-40150-FDS, 2005 WL 3116758, at *14 (D. Mass. Nov. 21, 2005) (equity under stock agreement not wages).

purpose—'to prevent the unreasonable detention of wages.'") (quoting *Bos. Police Patrolmen's Ass'n, Inc. v. City of Bos.*, 435 Mass. 718, 720 (2002)).

Personal time is not a wage. Massachusetts courts have repeatedly rejected efforts to hold that categories of paid time off beyond vacation time are wages under the Wage Act. *See Mui*, 478 Mass. at 712-13 (holding that accrued, unused sick time was not a wage under the Wage Act because it was not compensable under a "use it or lose it" sick time policy); *Souto v. Sovereign Realty Assocs., Ltd.*, No. 0501281, 2007 WL 4708921, at *4 (Mass. Super. Dec. 14, 2007) (holding that employee was not entitled to recover under the Wage Act for unused personal and sick time absent express agreement with his employer); *Furtado v. Republic Parking Sys., LLC*, No. 19-CV-11481-DJC, 2020 WL 996849, at *3 (D. Mass. Mar. 2, 2020) (dismissing claim under the Wage Act for paid time off labeled as comp time and declining to expand the scope of the Wage Act). In *Mui*, the SJC declined to expand the Wage Act to cover accrued sick time. 478 Mass. at 713. In that case, the court reasoned that "although an employee may use accrued sick time under appropriate conditions, such time may be considered 'lost' if not used." *Id.* Under those circumstances, "[b]ecause accrued, unused sick time is not compensable under a 'use it or lose it' sick time policy, such time clearly is not a wage under the act." *Id.* Like the accrued sick time in *Mui*, Plaintiffs were offered three days of personal time each year under a "use it or lose it" policy. *See* Complaint, ¶ 11; Ex. B ("Because personal days do not accrue from year to year, they must be taken prior to the beginning of the next calendar year."); Paid Time Off & Leaves Overview ("3 personal days annually"). Moreover, Harvard's policies clearly state that "Employees leaving the University will not be paid for their unused personal days." Ex. B. Thus, like accrued sick time in *Mui*, the personal days at issue are not a wage under the Wage Act.

321874903v.1

Because the plain language of the statute undermines their claim, Plaintiffs instead suggest that personal time is akin to vacation time because there was no restriction on how they used the time. They acknowledge in their Amended Complaint, however, that they were entitled to and had a separate and distinct bank of vacation time, which Harvard *did* pay out upon termination. Thus, personal time was separate and distinct from any vacation time. Here, where Harvard has maintained clear distinctions between the two, personal time cannot be subsumed within vacation time.

In fact, the Office of the Attorney General has made clear that paid time off other than vacation time is different and does not need to be paid out. In the Massachusetts Attorney General's Advisory 99/1 ("An Advisory from the Attorney General's Fair Labor Division on Vacation Policies"), the Attorney General recognized that "[s]ome employers combine sick leave, personal leave, vacation leave, and/or other types of leave into one general category called 'annual leave.'" It explained that employers who do so must designate the amount of hours or days that are considered vacation time, and such time must be paid out upon termination. *Id.* Thus, the Attorney General has tacitly recognized that employers will offer other types of paid time off, including personal leave, and such leave *does not* need to be paid out upon termination. Moreover, in a case that analyzed whether vacation must be paid under the Wage Act, the SJC explicitly held that Attorney General's Advisory 99/1 should be given substantial deference. *See Elec. Data Sys. Corp. v. Att'y Gen.*, 454 Mass. 63, 68-71 (2009) (Relying on Advisory 99/1 and holding, "The duty of statutory interpretation is for the courts, to be sure, but '[i]nsofar as the Attorney General's office is the department charged with enforcing the wage and hour laws, its interpretation of the protections provided thereunder is entitled to substantial deference, at least where it is not inconsistent with the plain language of the statutory provisions.'") (quoting *Smith v. Winter Place*

*LLC*, 447 Mass. 363, 367-368 (2006) (discussing Attorney General advisory interpreting M.G.L. ch. 149, § 148A)).  Thus, the Advisory is persuasive authority and the logic applies here—Plaintiffs' personal time was separate from their vacation allotment; accordingly, it was not a wage under the Wage Act and not payable upon termination.  Plaintiffs' Amended Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant requests that the Court dismiss Plaintiffs' Complaint in its entirety and with prejudice.

DATED: November 13, 2025                                   Respectfully submitted,

                                              By: */s/ Molly C. Mooney*
Robert A. Fisher (BBO# 643797)
rfisher@seyfarth.com
Barry J. Miller (BBO#: 661596)
bmiller@seyfarth.com
Molly C. Mooney (BBO# 687812)
mmooney@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, Massachusetts 02210-2028
Telephone:    (617) 946-4800
Facsimile:     (617) 946-4801

ATTORNEYS FOR
DEFENDANT

321874903v.1

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2025, I filed and served this document through the electronic filing system on the following parties:

Francis J. Bingham
Francis.bingham@binghamhopkins.com
Brook Hopkins
Brook.hopkins@binghamhopkins.com
Bingham Hopkins LLC
20 University Road, Suite 500
Cambridge, MA 02138

Raymond Dinsmore, Esq
rdinsmore@hayberlawfirm.com
Richard E. Hayber, Esq
rhayber@hayberlawfirm.com
Ryan B. Guers, Esq.
rguers@hayberlawfirm.com
Hayber, McKenna, & Dinsmore, LLC
One Monarch Place, Suite 1340
Springfield, MA 01144

*/s/ Molly C. Mooney*
Molly C. Mooney