**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| ANNA WEICK and IRA STOLL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:25-CV-13123-AK |
| | ) | |
| v. | ) | |
| | ) | |
| PRESIDENT AND FELLOWS OF | ) | |
| HARVARD COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO REMAND AND DEFENDANT'S MOTION TO DISMISS**

**ANGEL KELLEY, D.J.**

Plaintiffs Anna Weick ("Weick") and Ira Stoll ("Stoll") (collectively "Plaintiffs") were previously employed by Defendant, Harvard College ("Harvard"). Plaintiffs allege that, pursuant to the Massachusetts Wage Act (the "Wage Act"), Harvard owes them payment for personal days they each accrued in their final year of employment. Harvard removed the action on the basis of federal question jurisdiction because, they assert, the state law claims are completely preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Now pending is their Motion to Dismiss and Plaintiffs' Motion to Remand. For the following reasons, Plaintiffs' Motion to Remand [Dkt. 14] is **GRANTED** and Defendant's Motion to Dismiss [Dkt. 16] is **DENIED AS MOOT**.

**I.    BACKGROUND**

Massachusetts employers must pay their employees all wages, including the cash value of their accrued but unused vacation time, upon separation from employment. Mass. Gen. Laws ch.

1

149 § 148. This case arises from a dispute whether an employer is required to pay out any accrued but unused "personal time" when an employee departs the employer. [Dkt. 17 at 9].

Plaintiffs are former employees of Harvard University. [Dkt. 11 ¶¶ 3-4].  Weick was a full-time clerical employee from August 2021 to June 2025 and was a member of the Harvard Union of Clerical and Technical Workers ("HUCTW" or "the Union"). [Dkts. 11 ¶¶ 11, 21; 27 at 4].  In her most recent role, she was a program manager for two student clinics at Harvard Law School. [Dkt. 27-1 ¶ 4].  Stoll, a non-union employee, was employed as a member of Harvard's professional staff from January 2019 to July 2023. [Dkt. 11 ¶¶ 12, 21].

Harvard employees accrue three days of personal time on January 1st of each year to be used at their discretion, like vacation days. [Dkts. 11 ¶ 13; 23-1].  If an employee chooses not to use the personal days, the unused time expires at the end of the year. [Id.].  When an employee is on Short Term Disability Leave, her sick days, vacation days, and personal days accrue in accordance with the process outlined in the "Harvard Human Resources Short Term Disability" policy. [Dkt. 27 at 3].  According to the policy, employees defined as clerical, technical, administrative, and professional staff accrue leave as usual during short-term disability leave. [Id.].

In other words, if a clerical employee was on short term disability on January 1st of a given year, that employee would accrue three personal days—just as she would if she was not on leave.  In contrast, if service and trade staff take short-term disability leave, they accrue paid time off as outlined in their collective bargaining agreements. [Id.].  Weick, a clerical employee, was on short term disability leave on January 1, 2025. [Id. at 2-4].  Thus, she accrued three personal days to be used at some point during the 2025 calendar year.  Harvard's internal human resources ("HR") system indicates that Weick accrued three personal days in 2025. [Id. at 2].  Weick did

not use any of these personal days, and she departed Harvard before the days off expired. [Dkt. 11 ¶ 22]. Stoll also accrued three personal days in 2025, which he also had not used when he departed. [Id.].

Plaintiffs argue that, under the Wage Act, they are entitled to a payout for their personal days as well as their vacation time. [Dkt. 15 at 1-4]. Harvard disputes this, arguing that personal time is not a "wage" for the purposes of the Wage Act; thus, they assert that Plaintiffs, or any other employees are not owed payouts for their unused personal time. [Dkt. 17 at 11]. To resolve this dispute, it is necessary for a court to determine whether "personal time" is considered a "wage" under the Massachusetts Wage Act.

## II.    PROCEDURAL BACKGROUND

On September 17, 2025, Weick filed a putative class action in Middlesex Superior Court on behalf of all similarly situated employees. [Dkt. 1-1]. Harvard removed the case to this Court on the grounds of complete preemption under the LMRA, 29 U.S.C. § 301. [Dkt. 1]. Plaintiffs filed their Amended Complaint on October 30, 2025, adding Ira Stoll as a Plaintiff. [Dkt. 11]. On November 13, 2025, Plaintiffs moved to remand the case to state court for lack of subject matter jurisdiction. [Dkt. 14]. That same day, Harvard filed a motion to dismiss the case. [Dkt. 16].

## III.    LEGAL STANDARD

A defendant may remove to federal district court any civil action brought in a state court that could have been brought in the federal district court initially. 28 U.S.C. § 1441(a); see Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987); Ortiz-Bonilla v. Federacion de Ajedrez de P.R., Inc., 734 F.3d 28, 34 (1st Cir. 2013). The removal statute, which does not itself create jurisdiction, must be strictly construed. Danca v. Private Health Care Sys., 185 F.3d 1, 4 (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941)). If there is any ambiguity as

3

to the source of law for plaintiff's claims, that ambiguity must be resolved in favor of remand. Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 11 (1st Cir. 2004).  This is because the defendant bears the burden of showing that federal question jurisdiction exists and because there are important federalism concerns implicated by removal. Id.

Federal district courts have original jurisdiction over actions that involve federal questions, that is, claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  If a case has been improperly removed to federal court, it should be remanded back to state court.

## IV.    DISCUSSION

Harvard argues that this court has federal question jurisdiction based on Section 301 of the LMRA. [Dkt. 1 ¶ 9].  The LMRA confers jurisdiction on federal courts to resolve "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a).

The Supreme Court has repeatedly warned against finding claims completely preempted merely based upon the existence of a collective bargaining relationship ("CBA"). Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985) ("Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law."); Caterpillar, 482 U.S. at 396 n.10 ("Claims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301.").

Harvard argues that Section 301 preempts the Plaintiffs' statutory wage claims because resolution of those claims will require interpretation of the CBA, thereby establishing federal question jurisdiction and justifying dismissal of the claims. [Dkt. 1 ¶ 16].  Plaintiffs counter that

4

"[t]his case can be resolved without even pulling the CBA off the shelf, much less interpreting its terms." [Dkt. 15 at 2].

The LMRA's purpose is not to deprive unionized workers of state law wage protections merely because they belong to a union, but rather to ensure that disputes about the meaning and application of a CBA itself are subject to a uniform body of law. See Smith v. Evening News Ass'n, 371 U.S. 195 (1962). Further, as the First Circuit has explained, Section 301 preemption applies to only two categories of state law claims: (1) claims that are "founded directly on rights created by collective-bargaining agreements," and (2) claims that are "substantially dependent on analysis of a collective-bargaining agreement." Cavallaro v. UMass Mem'l Healthcare, Inc., 678 F.3d 1, 5 (1st Cir. 2012) (quoting Caterpillar, 482 U.S. at 394). As discussed below, neither situation applies here; therefore, Plaintiffs' claims are not preempted by Section 301 of the LMRA.

### A.      Founded on Rights Created by the CBA

Massachusetts employers must pay their employees all wages, including the cash value of their accrued but unused vacation time, upon separation from employment. See Mass. Gen. Laws. ch. 149 § 148. Massachusetts courts have held that vacation time is a "wage" under the Massachusetts Wage Act because "it can be used for time away from work for any reason." Tze-Kit Mui v. Mass. Port Auth., 478 Mass. 710, 713 (2018) (contrasting vacation time with other forms of paid time off, such as "sick time," that are not considered "wages" because their "usage is conditional"). As discussed below, the rights at issue in this case are created by statute (i.e., the Wage Act), not by a CBA.

Here, Harvard argues "Harvard's obligations regarding paid vacation time, paid personal time, and paid sick time for HUCTW employees like Weick are established under the CBA. Whether Weick was entitled to payment of unused personal time at the end of her employment is

entirely a function of that agreement and not an independent statutory right." [Dkt. 23].

The Court disagrees.  Plaintiffs' claims are based on a statutory right that is independent of the CBA.  The Massachusetts Wage Act establishes a statutory right for an employee to receive pay for all wages, including the cash value of their accrued but unused vacation time, upon separation from employment. Mass. Gen. Laws ch. 149 § 148.  Specifically, the statute states that "[e]very person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week." Id. This includes holiday and vacation time; the statute specifies that the "word 'wages' shall include any holiday or vacation payments due an employee under an oral or written agreement." Id.  The Act also creates a duty for the employer to abide by this requirement, specifying that the "attorney general may make complaint or seek indictment against any person for a violation of section 148." Mass. Gen. Laws ch. 149 § 150.  Thus, the rights and duties at issue in this dispute are created by statute (i.e., the Massachusetts Wage Act), not by a CBA.

An employer cannot contract away an employee's statutory rights through a CBA.  For example, if a CBA states that an employer will not pay out vacation time upon departure, that provision has no bearing on the employer's statutory duty to do so.  Whether a CBA defines, establishes, omits, or rejects certain benefits has no bearing on an employee's rights or an employer's duties under state law.  If that were the case, LMRA preemption would impermissibly confer upon unions and employers the "power to exempt themselves from whatever state labor standards they disfavored" and the "ability to contract for what is illegal under state law." Allis-Chalmers Corp., 471 U.S. at 212.

Thus, Section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on

6

individual employees as a matter of state law." Livadas v. Bradshaw, 512 U.S. 107, 123 (1994). A contrary rule "would provide union employers with irresistible incentive to pour into the collective bargaining agreement all the safety, insurance, and individual rights protected by state law, and then claim immunity from suit." Cullen v. Henry Haywood Mem'l Hosp., 95 F. Supp. 3d 130, 137 (D. Mass. 2015) (quoting LaRosa v. United Parcel Serv., Inc., 23 F. Supp. 2d 136, 144 (D. Mass. 1998)).

Accordingly, the first category of Section 301 preemption does not apply and, as discussed below, neither does the second category.

### B.    Substantially Dependent on Analysis of the CBA

Preemption applies only to cases founded directly on rights created by CBAs, and claims that are substantially dependent on the analysis of a CBA. See Cavallaro, 678 F.3d at 5. Plaintiffs' claims can be resolved through an analysis of state law and without any interpretation of a CBA. State law claims that require "only consultation with the CBA," as opposed to "actual interpretation" of the CBA, "should not be extinguished." Adames v. Exec. Airlines, Inc., 258 F.3d 7, 12 (1st Cir. 2001); see Cavallaro, 678 F.3d at 7; Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 18 (1st Cir. 2018).

The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar, 482 U.S. at 392 (citation omitted).

The removal statute does not permit a defendant faced with a claim grounded exclusively in state law to create federal question jurisdiction and remove to federal court on the sole basis that the defendant has raised a federal defense. Id. at 392-93. In short, the general rule is that removal is proper only for a complaint that alleges a federal cause of action on its face. The

7

complete preemption doctrine is "an 'independent corollary' to the well-pleaded complaint rule." Id. at 393.

To establish preemption, it is not sufficient to merely consult a CBA while litigating a state law claim. See Livadas, 512 U.S. at 124. State law claims "depend[] upon the meaning of" a CBA if their resolution "arguably hinges upon interpretation" of a CBA, Flibotte v. Penn. Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997), but not if their resolution can be achieved without reference to or merely by consulting the terms of a CBA, Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 10 (1st Cir. 1999). Thus, courts "confronted with state law claims must therefore locate the line between the need for mere consultation of a CBA, which does not demand federal preemption, and more active interpretation of that agreement, which does preempt the state law claims." Id.

The First Circuit has recognized that, in many cases, there may be a challenging line-drawing exercise in determining just how much connection to a CBA will transmute a claim that has been denominated as a state law matter into a federally preempted one. See Livadas, 512 U.S. at 124 n.18 (noting judicial confusion about scope of LMRA complete preemption); Cavallaro, 678 F.3d at 5 (remarking that the Supreme Court "has never fully integrated" LMRA complete preemption cases into a unitary doctrine).

This, however, is not one of those cases. The face of the Complaint raises no federal question, so the well-pleaded complaint rule would typically preclude federal question jurisdiction and would require remand. [Dkt. 1-1]. Harvard argues that there are CBA provisions that bar Plaintiffs' claims; namely, Harvard claims that "[d]etermining whether Weick had any usable personal days at the time of her separation, given that she was on leave until the end of her employment in June 2025, requires interpretation of the CBA." [Dkt. 23 at 7]. However, the

8

record does not support this argument.

Harvard argues that because Weick was on short term disability leave from September 2024 through her separation in June 2025, the Court must interpret the CBA to determine whether she had accrued any personal days. [Id. at 8].  However, Harvard does not point to any relevant provision of the CBA that the Court could consult to answer this question.  Rather, Harvard's own internal HR records show that Weick had three accrued, unused personal days available as of April 2025. [Dkt. 27-2].  Thus, resolution of the amount of personal time owed to Weick does not require any consultation of the CBA; instead, it requires only a reference to Harvard's internal HR records.

Even if Harvard's records did not decisively establish that Weick had three personal days upon separation, any ambiguity could not be resolved by consulting the CBA.  Instead, the "Harvard Human Resources Short Term Disability" policy describes how sick, vacation, and personal time is accrued during a short-term disability leave: clerical, technical, administrative, and professional staff all accrue "personal days" during short term disability leave. [Dkt. 27 at 3]. In contrast, service and trade staff accrue paid time off as outlined in their CBAs. [Id.].  Weick, as a clerical employee, plainly accrued personal time while on short term disability leave—in accordance with Harvard's short term disability policy, not her union's CBA. [Id.].  Stoll also accrued three personal days in 2025, which he did not use. [Dkt. 11 ¶ 22].  Stoll, a non-union employee, was employed as a member of Harvard's professional staff from January 2019 to July 2023.

Thus, there is no need to consider any fine-tuned distinction between "consultation" and "interpretation" of the CBA.  As the First Circuit has noted, "'[w]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be

consulted' does not trigger complete preemption.'' <u>Rueli v. Baystate Health, Inc.</u>, 835 F.3d 53, 58 n.3 (1st Cir. 2016) (quoting <u>Livadas</u>, 512 U.S. at 124).

Because the relevant information is available in Harvard's internal records [Dkt. 27-2], determining whether Plaintiffs should have been paid for their personal time does not require interpretation of the CBA and thus does not provide grounds for Section 301 preemption.

### C.    Remand

If there is any ambiguity as to the source of law for plaintiff's claims, that ambiguity must be resolved in favor of remand. <u>Rossello-Gonzalez</u>, 398 F.3d at 11.  Under Massachusetts law, employees are entitled to a payout of their vacation days upon departure from a job. Mass. Gen. Laws ch. 149 § 148.  However, it is unclear whether personal time is a wage for the purposes of the Wage Act. <u>Compare</u> <u>Byrnes v. Lukes</u>, No. WOCV200901403, 2012 WL 66088974 (Mass. Super. Sept. 27, 2012) (ordering employer to pay former employee for accrued personal days) <u>with</u> <u>Fontana v. City of Boston</u>, 106 Mass. App. Ct. 780, 781 (2026) (finding that "compensatory time off" is not a wage for purposes of the Wage Act); <u>see also</u> <u>Tze-Kit Mui</u>, 478 Mass. at 713 (clarifying that vacation time, which, unlike sick time, "can be used for time away from work for any reason" is considered a wage under state law).  Thus, whether personal time is considered a wage under the Wage Act is entirely a question of state law interpretation that is best left to the state courts and the case is remanded.

### IV.    CONCLUSION

For the foregoing reasons, the Plaintiff's Motion to Remand [Dkt. 14] is **GRANTED,** and Defendant's Motion to Dismiss [Dkt. 16] is **DENIED AS MOOT** without prejudice.  This case shall be **REMANDED** to Middlesex County Superior Court, where it was originally filed.

**SO ORDERED.**

Dated: July 15, 2026                                    /s/ Angel Kelley
                                                         Hon. Angel Kelley
                                                         United States District Judge